## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 20-CR-28 (RBW) |
| v. | : | |
| | : | |
| DARRELL FOSTER, | : | |
| | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum in support of its request and recommendation that the Court sentence the defendant to 18 months on the Escape charge and 14 months on the Fleeing and Eluding charge, to be followed by a period of three years supervised release.

### FACTUAL BACKGROUND

After being convicted of Robbery and Unlawful Possession of a Firearm in D.C. Superior Court, the defendant began serving his sentence at the United States Penitentiary at Hazelton, West Virginia. The defendant was later transferred to Hope Village on October 8, 2019, to complete his sentence there. On October 20, 2019, at approximately 7:30 p.m., the defendant gathered all of his personal belongings and walked out of Hope Village without authorization. He was placed on escape status and his whereabouts remained unknown for the next nine months.

On August 8, 2020, at approximately 10:55 p.m., the Prince George's County Police Department ("PGPD") received a report of an Armed Carjacking of a 2016 Toyota Camry out of Hyattsville, Maryland. The owner of the car, J.M., had parked his Camry and stepped out of it, when several suspects approached him, brandishing handguns, and demanded his cell phone and

1

car keys.  In fear for his life, J.M., complied.  The armed men jumped in J.M.'s car and sped away. Over the next 42 hours, the Camry was caught speeding through five speed cameras.

On August 10, 2020, at approximately 5:00 p.m., PGPD officers spotted the stolen Camry and followed it into Washington, D.C.  PGPD alerted the Metropolitan Police Department's (MPD) Seventh District and MPD officers responded to the area to assist. Multiple marked police vehicles, with lights and sirens activated, attempted numerous times to initiate a traffic stop on the Camry. However, the defendant, who was driving the Camry, refused to bring the car to a stop, and continued to operate the vehicle in a reckless manner, in an attempt to flee and elude all law enforcement officers involved.

Eventually, the defendant drove the stolen Camry into the 1600 block of V Street S.E., Washington, D.C., where cars were parked on both sides of the narrow street. Additionally, a D.C. Fire and EMS ambulance was parked in front of 1624 V Street on an uninvolved call for service. Paramedics were inside the ambulance treating a patient at the time.  Although there was insufficient room for the defendant to continue up the street, he nonetheless continued driving, striking a parked Hyundai Elantra, owned by C.C., as well as the ambulance, causing property damage to both the Hyundai and the ambulance, as well as the Camry.  The defendant then hopped out of the Camry and attempted to flee from officers on foot.

After a brief foot chase, officers were able to catch the defendant and secure him in handcuffs. Officers searched law enforcement databases to determine if there were any outstanding warrants for the defendant and discovered the outstanding Escape warrant.  Additionally, the law enforcement database confirmed that the defendant did not possess a valid license to operate a motor vehicle. The defendant was subsequently charged with the U.S. Code offense of Escape (District Court) and D.C. Code charges for Unauthorized Use of a Vehicle, Felony Fleeing and

Eluding, Leaving After Colliding, Destruction of Property, and No Permit (Superior Court). The cases were eventually joined for a global plea to Escape and Felony Fleeing and Eluding.

## VICTIM IMPACT STATEMENTS

J.M., the original carjacking victim, has indicated that he wishes to make a statement at sentencing. As noted above, J.M.'s vehicle received five speeding tickets between when it was stolen and when it was recovered 42 hours later. As listed below, the total is $940, which the defendant ought to be required to pay as part of his sentence. This restitution was agreed to by the defendant. *See* Presentence Report ("PSR") at ECF Doc. 15, at ¶ 103.

| Date/Time | Citation No. | Speed | Location | Amount |
|---|---|---|---|---|
| 08/08/2020; 10:56 p.m. | TP004942931 | 47/35 | 7200 b/o New Hampshire Ave | $40.00 |
| 08/08/2020; 11:48 p.m. | 12012363 | 43/25 | 3100 b/o 4TH Street | $150.00 |
| 08/09/2020; 3:56 a.m. | 12012873 | 56/40 | 3000 b/o North Capitol Street | $150.00 |
| 08/09/2020; 3:55 a.m. | 12012873 | 44/30 | 4400 b/o Clermont Drive | $100.00 |
| 08/10/2021; 5:xx p.m. | 12021117 | 64/25 | 2300 b/o Good Hope Road | $500.00 |
| | | | Total | $940.00 |

The undersigned has been in communication with the General Counsel's Office for D.C. Fire and EMS ("DCFEMS") regarding any statement they wish to make, or any restitution they are seeking for damage to the ambulance. A statement from DCFEMS and a restitution request, if any, will be provided during the sentencing hearing.

The undersigned has left a voice mail message for C.C., the owner of the Hyundai that the defendant struck during his flight from police, to determine if she wishes to make a Victim Impact Statement. Further attempts will be made to contact C.C. and a statement, if any, will be provided during the sentencing hearing.

## SENTENCING RECOMMENDATION

All of the applicable factors set forth in Title 18, United States Code, Section 3553(a), should be considered by this Court.   See United States v. Gall, 128 S.Ct. 586 (2007).   These factors include the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. §§ 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

As agreed to in the plea agreement, the government is recommending a sentence at the low end of the guideline range, that is, 18 months incarceration on the Escape charge and 14 months on the Fleeing and Eluding charge.   The defendant's behavior in this matter, coupled with his previous criminal activity, proves that he is a danger to the community.   This is not the defendant's first conviction, as he has a criminal history dating back over 10 years.   The defendant has spent several years in the Bureau of Prisons ("BOP"), where he amassed numerous disciplinary infractions, including several weapons infractions (*see* PSR, pages 12-13; ¶ 40).   Of course, the most recent BOP offense was escaping from the correctional facility, for which he is before the Court today.

The defendant is currently 26 years old and has been involved in the Criminal Justice System for more than a decade. He has been arrested 16 times and was a fugitive when he led the police on a car chase that resulting in damage to the property of others.   Nonetheless, the defendant has potential to live a law-abiding life and can turn his life around.   The defendant,

and his family, point to his mental health struggles and his father's untimely death as factors that led to much of the defendant's antisocial behavior. However, the defendant has managed to avoid illicit drug use and alcohol abuse, which is a promising sign. *See* PSR ¶ 79. Additionally, the defendant has developed a keenness for the cooking and dreams of becoming a chef. *See* PSR ¶¶ 62 and 85. The defendant also has expressed a desire to obtain his GED. *See* PSR ¶ 83. The defendant has potential if he would only stop being involved with illegal activities. If the defendant would put all of the energy that he placed in illegal activities into constructive, legal work, he would have the potential to achieve many things. The government joins the PSR writer's recommendation that the defendant participate in both the BOP's Literacy Program (where he can obtain his GED) and the Occupational Education Program (where he can gain job skills[1]).

Consideration of the factors set forth in Section 3553(a) leads to the conclusion that sentences of 18 months incarceration on the Escape charge and 14 months on the Fleeing and Eluding charge, followed by a term of supervised release, is warranted. The government has considered what would be an appropriate sentence for the defendant, balancing the seriousness of the offense, the need for just punishment, the threat the defendant poses to the community, and affording adequate deterrence to criminal conduct. Based upon a consideration of all of the factors set forth in Title 18, United States Code, Section 3553(a), this sentence of incarceration followed by a period of supervised release is appropriate. The government further recommends that while the defendant is incarcerated, that he be ordered to participate in both the Literacy Program and the Occupational Education Program and that, while both incarcerated and while

---

[1] Several BOP facilities offer Culinary Arts courses. *See*
https://www.bop.gov/inmates/custody_and_care/docs/inmate_occupational_training_directory.pdf

on supervised release, he be ordered to maintain his mental health treatment.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY
D.C. Bar No. 415793


By:   _____

Dineen A. Baker, D.C. Bar No. 487820
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6954
dineen.baker@usdoj.gov

6